IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

E. RITTER COMMUNICATIONS
HOLDINGS, LLC                                                                        PLAINTIFF

V.                                              3:25CV0004 JM

CENTURYTEL BROADBAND
SERVICES, LLC, n/k/a BRIGHTSPEED
BROADBAND, LLC                                                                    DEFENDANT

## ORDER

Pending are motions for summary judgment filed by both parties. The motions have been fully briefed and are ripe for consideration. Despite the Court's initial communication with the parties, further review leads the Court to conclude that the Defendant's motion for summary judgment must be granted.

I.    Facts

Plaintiff E. Ritter Communications Holdings LLC ("Ritter") and Defendant Brightspeed Broadband LLC ("Brightspeed") entered a contract for Ritter to provide telecommunications services.  The contract entitled Master Services Agreement ("MSA") was executed on October 19, 2022.[1] Jeff Flowers, Ritter's Vice President of Wholesale, signed the MSA on behalf of Ritter and Jennifer Bosler, Brightspeed's Manager of Carrier Relations, signed on behalf of Brightspeed. The MSA states that it is governed by the law of Delaware.

On February 28, 2023 Brightspeed signed two Service Order Agreements with Ritter for multiple broadband fiber services. On March 1, 2023, Brightspeed signed a third Service Order with Ritter which Ritter signed on March 3, 2023.[2] Each Service Order identified a different

---

[1] The MSA is attached to the Amended Complaint at Exhibit A, Dkt. No. 2 at pgs. 7-19.
[2] The Service Orders are also attached to the Amended Complaint at Exhibit B-D No. 2 at pgs. 46-57.

location for fiber services to start, e.g., Monette, Russellville and Jacksonville, Arkansas, but the endpoint for each location was the same, 423 East 20th Street, North Little Rock, Arkansas. The Service Orders state that Ritter "agrees to provide and [Brightspeed] agreed to accept the services in the Service Description …. (the "Service") beginning on or about the date that Ritter notifies [Brightspeed] that the Service is installed or connected and available for use (the "Service Commencement Date.). . .." (Service Orders, Dkt. Nos. 16-2 through 16-4).

The Service Orders incorporated the MSA and required compliance with all MSA terms. *Id.* According to the MSA, Ritter should issue a firm order commitment ("FOC")[3] form to Brightspeed within 5 five business days after the execution of a Service Order. (MSA, Dkt. No. 16-1, § 1.21 at p. 4). "[A]fter the FOC date is provided by [Ritter] to [Brightspeed], but prior to installation, [Brightspeed] may cancel the Service Order with [Ritter], with the maximum termination cost of one (1) month's monthly recurring charge (MRC) and the associated non-recurring charges (NRC), plus any documented third party and special construction charges." *Id.*

The MSA also provided that Brightspeed,

at its sole cost and expense, shall provide [Ritter] with all necessary information and access to all applicable [Brightspeed] locations for purposes of providing the Services, including installation . . . on [Brightspeed] premises. For purposes of the preceding sentence, "access" shall include without limitation any necessary license(s) to access, occupy and conduct telecommunication operations within each respective building and or property for the duration of the Service Term (including any necessary rights for Service Provider to enter and access each building, and for providing all necessary cable pathways, building access and/or occupancy fees, riser fees, cross-connects and cross-connect fees, coordination at any third party owned location, and, where applicable, necessary space for Service Provider's fiber termination panel)."

*Id.* at § 1.4, p. 4-5.

---

[3] The FOC is the date by which a Service shall be tested and delivered for the Customer's use. (MSA § 1.1.8, Dkt. No. 2 at p. 7).

In order to install the Services as described in the Service Orders, Ritter needed access inside the North Little Rock endpoint facility at 423 East 20th Street. This facility was owned by Lumen Technologies, Inc. ("Lumen"). Brightspeed had office space located at the Lumen facility through a colocation agreement with Lumen. However, Brightspeed did not have the right to allow Ritter to enter the facility or complete installation there.

On June 13, 2023, Bosler emailed Flowers an official notice that Brightspeed was cancelling the Service Orders effective immediately. (Email, Dkt. No. 16-7; Bosler Dep., Dkt. No. 21-3 at 39:13-14). The following day Brightspeed executed an agreement with Lumen to provide the services included in the Service Orders. (Bosler Dep., 21-3 at 38:6-8). Ritter sent Brightspeed an invoice dated August 1, 2023, seeking Early Termination Charges, with a stated due date of August 22, 2023. Brightspeed did not pay the invoice.

Ritter filed suit in Craighead County Circuit Court on August 22, 2024 and amended the Complaint on January 12, 2025. (Notice of Removal, Dkt. No. 1 at ¶ 1). Defendant timely removed the action to this Court on January 13, 2025 based upon diversity of citizenship and an amount in controversy exceeding $75,000. Ritter filed a motion for partial summary judgment for Brightspeed's failure to pay the charges owed after termination. Brightspeed filed a cross motion for summary judgment of all claims against it.

II.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transp. Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), cert. denied, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248.

"Courts take a "slightly modified" approach when, as here, multiple parties have moved for summary judgment." *State Farm Life Ins. Co. v. Youngs*, 2022 WL 1017813, at *2 (D. Minn. Apr. 5, 2022) (citing *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012)). The record must be viewed in the light most favorable to the Defendants in resolving Plaintiff's motion, the record is viewed in the light most favorable to Plaintiff in resolving Defendants' motion. "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary

determination on the merits." *Id.* (citing *Young Am.'s Found. v. Kaler*, 482 F. Supp. 3d 829, 851 (D. Minn. 2020)).

III.    Discussion of the Law

Brightspeed advances several reasons why the claims against it must be dismissed. One argument is that the MSA and the Service Orders are separate contracts and Brightspeed only cancelled the Service Orders not the MSA. Therefore, the terms of the MSA are not applicable here. If the MSA is applicable, Brightspeed contends that Ritter's claims are barred by Section 6.2 of the MSA providing a one-year statute of limitations under any theory of recovery and Section 6.1 which limits liability for indirect, consequential, exemplary, reliance, incidental or punitive damages arising from the contract. Finally, Brightspeed argues that Ritter's implied contract theory and promissory estoppel claims fail because there is a written agreement.

Ritter contends that Brightspeed breached the MSA by failing to pay the Early Termination Charge as required by Section 4.1 of the MSA and by failing to give Ritter access to Brightspeed locations in order to complete installation. Ritter further argues that Brightspeed breached Section 4.1 of the MSA when it canceled the Service Orders without thirty (30) days' notice. Ritter does not seek summary judgment as to damages under the MSA or as to the alternative theory of promissory estoppel.

"'[T]he threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous.' *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007). Ambiguity exists 'when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.' *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). 'Ambiguity does not exist simply because the parties disagree about what the

contract means.' *United Rentals, Inc.*, 937 A.2d at 830. The moving party will be entitled to summary judgment where it can show its construction of the contract 'is the only reasonable interpretation.'" *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530, at *5 (Del. Ch. Nov. 2, 2017), aff'd, 202 A.3d 509 (Del. 2019) (quoting *Rhone*, 616 A.2d at 1198)). "[W]here a contract provision lends itself to two interpretations, a court will not adopt the interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions." *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010), as corrected (May 10, 2010). "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739-41 (Del. 2006) (quoting *Rhone,* 616 A.2d at 1196 (Del. 1992)).

The Court finds that the terms of the MSA apply to the Service Orders. "'It is, of course, axiomatic that a contract may incorporate by reference provisions contained in some other instrument.'" *In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116, 151 (Del. Ch. 2020) (quoting *State ex rel. Hirst v. Black*, 83 A.2d 678, 681 (Del. Super. Ct. 1951)). "As long as a contract 'refers to another instrument' and 'makes the conditions of such other instrument a part of it, the two will be interpreted together as the agreement of the parties.'" *Id. (*quoting *Brastor Mercantile, Ltd. v. Central Citrus S/A,* 1989 WL 70971, at *4 (Del. Super. Ct. June 6, 1989)). The Service Orders expressly state that the MSA is fully incorporated, and its terms and conditions apply. Therefore, Brightspeed's argument that the terms of the MSA are not application to this dispute because the dispute only pertains to the Service Orders is foreclosed. Further, the Court finds that neither the MSA nor the Service Orders are ambiguous.

The Court next looks to Section 6.2 of the MSA, Limitation of Claims. This provision states: "No cause of action under any theory which accrued more than one (1) year prior to the institution of a legal proceeding alleging such cause of action may be asserted by either Party against the other." "It is well-established in Delaware that, 'in the absence of [an] express statutory provision to the contrary, a statute of limitations does not proscribe the imposition of a shorter limitations period by contract.'" *Smith v. Mattia*, 2010 WL 412030 at *3 (Del. Ch. Feb. 1, 2010) (quoting *Rumsey Elec. Co. v. Univ. of Del.*, 358 A.2d 712, 714 (Del.1976)).

There is disagreement between the parties about when a cause of action may have accrued. For purposes of this argument, Brightspeed contends that Ritter's cause of action for breach of contract accrued no later than June 13, 2023 when Brightspeed cancelled the Service Orders. Ritter argues that the cause of action did not accrue until August 22, 2023, the due date for the Early Termination Charge invoice.

"A cause of action for breach of contract accrues when the contract is broken, not when actual damage results or is ascertained." *NVR, Inc. v. Carter Farm, LLC*, 2026 WL 297226, at *11 (Del. Ch. Feb. 4, 2026). However, "[i]f the continuing breach exception applies ... the statute begins to run the moment 'full damages can be determined and recovered,' which may not happen until the contract terminates." *Id.* (quoting *AM Gen. Holdings LLC v. The Renco Group, Inc.*, 2016 WL 4440476 *11 (Del. Ch. Aug. 22, 2016). The continuing breach doctrine, however, is typically "applied only in unusual situations." *Id.*

Ritter cites *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, for its argument that the cause of action for breach arose on the date the Early Termination Charge invoice was due. Ritter specifically points to the *Cannon* court's ruling that the Delaware statute

of limitations did not begin to run on a claim for indemnification of legal expenses until the last legal services were rendered.

In *Cannon*, the plaintiff, a subcontractor, filed suit against its liability insurer for indemnification and for the insurer's failure to defend the plaintiff. *Cannon*, 484 F. Supp. 1375 (D. Del. 1980). Under Delaware law, "[i]n the case of a contract for indemnity against liability, the cause of action accrues and the statute of limitation begins to run when indemnitor-liability becomes fixed and ascertained or as soon as the debt becomes due." *Sorensen v. Overland Corp.*, 142 F.Supp. 354, 361 (D.Del.1956), aff'd, 242 F.2d 70 (C.A.3, 1957). The instant case does not involve contractual indemnification. Claims for breach of contract where the claims involve direct injury, not indemnification, accrue at the date of breach or injury. *See Certainteed Corp. v. Celotex Corp.,* 2005 WL 217032, *5 (Del. Ch. Jan. 24, 2005) ("[I]n the case of counts for breach of contract and misrepresentation, where claims involve direct injury to CertainTeed . . . timeliness is to be measured by the statute of limitations for breach of contract and torts, respectively, with accrual occurring at the date of breach or injury, absent tolling. Only if the underlying claim for contractual indemnification is actually a claim for losses resulting from liability to a third party (i.e., like a common law indemnity claim) will CertainTeed's claim accrue at the time when the last dollar of loss is ascertainable.").

Ritter states in the Amended Complaint that the lawsuit arises out of the failure of Brightspeed to pay an invoice owed by it concerning installation work. . .." (Am. Comp., Dkt. No. 2 at ¶ 3). However, the obligation to pay an Early Termination Charge under the MSA was not created by the invoice or the invoice due date. The alleged breach occurred when Brightspeed cancelled the project not when Brightspeed failed to pay. Ritter does not argue a continuing breach exception as recognized under Delaware law and, further, there is no evidence

to support the exception. There was no continuing contract or continuing breach. After the cancellation, Ritter had no communication with Brightspeed about the Service Order projects. (Flowers Dep., Dkt. No. 21-2 at 60:17-61:24; Bosler Dep., Dkt. No. 21-3 at 39:15-21; Wagner Dep., Dkt. No. 21-7 at 31:7-15; Stampke Dep., Dkt. No. 21-8 at 28:3-6; ) The only communication between the parties after June 13, 2023 involved Early Termination Charges. Therefore, the cause of action accrued no later than June 13, 20023.

Next, Ritter argues that the word "theory" used in Section 6.2 "is a reference to those items listed in Section 6.1, which does not apply to direct damages." Section 6.1 provides:

> Limitation of Liability. EXCEPT FOR: (i) A PARTY'S INDEMNIFICATION OBLIGATION; (ii) A PARTY'S BREACH OF SECTION 10.1 (NON-DISCLOSURE); OR (iii) ACTIONS ARISING FROM GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, SPECIAL, RELIANCE, COST OF COVER, INCIDENTAL OR PUNITIVE DAMAGES (INCLUDING WITHOUT LIMITATION, LOST BUSINESS, REVENUE, PROFITS, OR GOODWILL) ARISING IN CONNECTION WITH THIS AGREEMENT OR THE PROVISION OF SERVICES HEREUNDER (INCLUDING ANY SERVICE IMPLEMENTATION DELAYS/FAILURES), UNDER ANY THEORY OF TORT, CONTRACT, WARRANTY OR STRICT LIABILITY, EVEN IF THE PARTY HAS BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.

The Court disagrees. The plain language of Section 6.2, Limitation of Claims, does not refer to Section 6.1. Had the partes intended Section 6.2 to be limited by the language of 6.1 they could have easily included that language. They did not. Further, a reasonable person in the position of the parties would not think the word "theory" in the phrase "no cause of action under any theory" referred only to the damage categories listed in the previous section.

Ritter filed this action on August 22, 2024, more than one year after Brightspeed's alleged breach. The Court finds that all causes of action asserted by Ritter against Brightspeed, under any theory of liability, are barred by Section 6.2 of the MSA.  Accordingly, Brightspeed's motion for summary judgment (Dkt. No. 20) is GRANTED. Ritter's motion for partial summary judgment

(Dkt. No. 16) is DENIED. The bench trial set for March 16, 2026 is canceled. The Clerk is directed to close the case.

IT IS SO ORDERED this 6th day of March, 2026.

_____
James M. Moody Jr.
United States District Judge

10